## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MATTHEW GOLD, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Case No. |
| Plaintiff, ) ) | **CLASS ACTION** |
| v. ) ) | |
| FORESTAR GROUP INC., PHILLIP J. WEBER, JAMES A. RUBRIGHT, DANIEL B. SILVERS, RICHARD M. SMITH, M. ASHTON HUDSON, and RICHARD D. SQUIRES, ) ) ) ) ) ) | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934** |
| Defendants. ) ) ) | **JURY TRIAL DEMANDED** |

Plaintiff Matthew Gold ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Forestar Group Inc. ("Forestar" or the "Company") against Forestar and the members of its board of directors (collectively, the "Board" or "Individual Defendants," and, together with Forestar, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Merger") between Forestar, Terra Firma Merger Parent, L.P., and Terra Firma Merger Sub, L.P. (collectively, "Terra Firma"), affiliates of Starwood Capital Group ("Starwood").

2.      On April 13, 2017, the Board caused the Company to enter into an Agreement and

Plan of Merger ("Merger Agreement"), pursuant to which the Company's stockholders stand to receive $14.25 in cash for each share of Forestar common stock they own (the "Merger Consideration").

3.      On June 1, 2017, in order to convince Forestar stockholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading Definitive Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's stockholders in the Proxy, they have failed to disclose certain material information that is necessary for Forestar stockholders to properly assess the true value of their shares, thereby rendering certain statements in the Proxy incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) Forestar's financial projections; and (ii) the valuation analyses performed by the Company's financial advisor, JMP Securities LLC ("JMP"), in support of its fairness opinion.

6.      On June 5, 2017, Forestar's Board received an unsolicited proposal from D.R. Horton, Inc. ("D.R. Horton") to acquire 75% of the outstanding shares of Forestar common stock for $16.25 in cash (the "D.R. Horton Proposal").  The $16.25 per share value represents a 14% premium over the purchase price to be paid to the Forestar stockholders pursuant to the existing Merger Agreement between Forestar and Terra Firma.

7.      The transaction proposed by D.R. Horton would be effected through a merger of a newly formed, wholly owned subsidiary of D.R. Horton with Forestar.  The merger would have a cash election feature in which Forestar stockholders would have the right to elect, for each share of common stock held, either to receive $16.25 per share in cash as merger consideration, or to

retain such share of the surviving entity.  Cash and stock elections would be prorated, such that 75% of the shares of Forestar common stock outstanding before the merger would be converted into the $16.25 per share cash consideration.  Following the merger, D.R. Horton would own 75% of the outstanding Forestar successor shares, and existing stockholders would own 25% of the outstanding Forestar successor shares.  Forestar would remain a public company, and its common stock would trade on the New York Stock Exchange.

8.      Despite the higher offer by D.R. Horton, as of June 8, 2017, Forestar's Board continues to recommend Forestar stockholders vote in favor of the Proposed Merger with Starwood.  Specifically, Forestar issued a news release stating, in pertinent part: "*Forestar's board of directors is not modifying, withdrawing, amending or qualifying its recommendation in favor of the Starwood merger agreement and the merger contemplated thereby, or proposing to do so, and is not making any recommendation with respect to the D.R. Horton proposal*.  There can be no assurance Forestar's board of directors will ultimately determine that D.R. Horton's proposal is a Superior Proposal under the terms of the Starwood merger agreement, that the terms of any transaction will be the same as those reflected in D.R. Horton's proposal or that any transaction or definitive agreement will result from D.R. Horton's proposal."

9.      The $14.25 Merger Consideration is grossly inadequate, and the Board should promptly accept D.R. Horton's superior proposal.  However, despite the D.R. Horton Proposal, the special meeting of Forestar stockholders to vote on the Proposed Merger with Starwood remains scheduled for July 7, 2017, and, based upon Forestar's June 8th news release, it is uncertain whether the Board will withdraw its recommendation in favor of the Proposed Merger with Starwood.  It is therefore imperative that the material information that has been omitted from the Proxy is promptly disclosed to the Company's stockholders, so that they can properly exercise

their corporate suffrage rights.

10.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Regulation G, 17 C.F.R. § 244.100.   Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to Forestar stockholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

12.     Personal jurisdiction exists over each Defendant because Forestar is a Delaware corporation and Defendants conduct business in or maintain operations in this District, and each Defendant has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under traditional notions of fair play and substantial justice.

13.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; (ii) Forestar is a Delaware corporation; and (iii) Defendants have received substantial compensation by doing business in this District and engaging in activities that had an effect in this District.

## PARTIES

14.     Plaintiff is, and at all relevant times has been, a Forestar stockholder.

15.     Defendant Forestar is a Delaware corporation.  Forestar invests in real estate, oil and natural gas producing properties, and forested land.  The Company develops residential and mixed-use communities, receives royalties from oil and natural gas producing properties in the southern United States, and sells wood fiber from its forests.  Forestar common stock trades on the New York Stock Exchange under the ticker symbol "FOR".

16.     Individual Defendant Phillip J. Weber has served as Forestar's Chief Executive Officer since September 2015 and is also a director of the Company.

17.     Individual Defendant James A. Rubright has served as Forestar's Non-Executive Chairman of the Board since September 2015.  Mr. Rubright also serves on the boards of AGL Resources Inc., an energy company, and HD Supply Holdings, Inc., an industrial supply company.

18.     Individual Defendant Daniel B. Silvers is, and has been at all relevant times, a director of the Company.  Mr. Silvers has served as Managing Member of Matthews Lane Capital Partners LLC, an investment management firm, since June 2015.  He is the former President of SpringOwl Asset Management LLC, an investment management firm, a position he held from March 2009 to June 2015.

19.     Individual Defendant Richard M. Smith is, and has been at all relevant times, a director of the Company.  Mr. Smith also serves on the board of Merryck & Co., a privately-held CEO mentoring firm.  Mr. Smith served on the board of Temple Inland Inc. until its February 2012 merger with International Paper Company.

20.     Individual Defendant M. Ashton Hudson is, and has been at all relevant times, a director of the Company.  Mr. Hudson is president and general counsel of Rock Creek Capital

Group, Inc., an alternative asset manager with significant land holdings throughout the southeast, and has been a partner and member of the Rock Creek Investment Committee since 2002.

21.     Individual Defendant Richard D. Squires is, and has been at all relevant times, a director of the Company.  Mr. Squires is also managing director and co-founder of Lennox Capital Partners, LLC, a special situations and value-oriented investment fund in publicly-traded debt, equity and bankruptcy securities and Delos Shipping, LLC, a private equity vehicle focused primarily on global product and chemical tanker acquisitions.  Mr. Squires is also a managing director and co-founder of SPI Holdings, LLC, a real estate company with land, retail, office, hotel, mini-storage and industrial assets.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Forestar (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.     This action is properly maintainable as a class action because:

a.      The Class is so numerous that joinder of all members is impracticable.  As of the record date, there were 41,934,751 shares of Forestar common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of Forestar will be ascertained through discovery;

b.      There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

       i)      whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

       ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

       iii)    whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Merger based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

I.    **The Merger Consideration is Inadequate in Light of Forestar's Intrinsic Value and Growth Potential**

24.    Forestar is a Delaware corporation.  The Company engages in the acquisition, entitlement, development, and sale of real estate, primarily residential and mixed-use communities. It also sells commercial tracts, residential lots, and undeveloped land, and operates commercial real estate and income producing properties, such as a hotel and multifamily properties.  The Company owns, directly or through ventures, approximately 4,600 acres of real estate projects located in 10 states and 14 markets in the United States.

25.    The Merger Consideration is inadequate and fails to fairly compensate Forestar stockholders for their shares.  Indeed, the $14.25 Merger Consideration is actually *below* the Company's April 11, 2017, closing stock price of $14.40, and is 14% below D.R. Horton's offer price of $16.25 per share.

26.    The Merger Consideration is also inadequate in light of Forestar's recent financial performance.  Specifically, on March 1, 2017, Forestar reported the following impressive financial results for its full year and fourth quarter 2016: full year 2016 net income was approximately $58.6 million, or $1.38 per share outstanding, compared with a full year 2015 net loss of approximately $(213.0) million, or $(6.22) per share outstanding; full year 2016 earnings from continuing operations were approximately $75.5 million, or $1.78 per share outstanding, compared with full year 2015 net loss from continuing operations of approximately $(26.9) million, or $(0.79) per share outstanding; fourth quarter 2016 net income was approximately $43.7 million, or $1.03 per share, compared with a fourth quarter 2015 net loss of approximately $(6.2) million, or $(0.14) per share outstanding; and fourth quarter 2016 earnings from continuing operations were approximately $43.2 million, or $1.02 per share outstanding, compared with fourth quarter 2015

earnings from continuing operations of approximately $33.3 million, or $0.79 per share outstanding.  The Company's fourth quarter financial results exceeded analysts' estimates.

27.     Commenting on the Company's strong financial results, Individual Defendant Weber stated:

> 2016 was a transformative year for Forestar.  We made exceptional progress executing our key initiatives to divest non-core assets, reduce outstanding debt, reduce SG&A costs and focus on maximizing shareholder value from our core community development business.  Key highlights included selling nearly $482 million in non-core assets, reducing outstanding debt by over $320 million since third quarter 2015, and reducing annual interest expense by approximately $23 million going forward.  Forestar is actively selling or preparing to sell its nine remaining non-core assets in 2017, four of which are already under contract to be sold.  Sales of these remaining non-core assets will generate additional cash and annual SG&A savings . . .In addition to executing these key initiatives, we have focused on maximizing shareholder value delivered from our core community development business.  Builder demand for residential lots in our key communities remains steady.  We sold 1,940 residential lots in 2016 and we began 2017 with approximately 2,100 residential lots under option contract with builders.

28.     Furthermore, the Company's stock price increased by approximately 34% between November 2016 and April 12, 2017, the date preceding the announcement of the Proposed Merger.

29.     In sum, the Merger Consideration grossly undercompensates Forestar stockholders for their shares.  Given that the Board currently intends to go forward with the stockholder vote on the Proposed Merger, it is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below.  While Forestar stockholders now know that D.R. Horton values the Company at $16.25 per share, they have not been provided with sufficient information to independently assess the veracity of JMP's valuations and determine the Company's true value.  Since the Board and JMP obviously failed to properly value the Company, Forestar stockholders must be provided with sufficient information to properly assess the Company's value for themselves.

## II.      The Materially Incomplete and Misleading Proxy

30.      On June 1, 2017, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Individual Defendants were obligated to carefully review the Proxy to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to assess the true value of their shares and make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

31.      With respect to JMP's Net Asset Valuation Analysis, the Proxy fails to disclose: (i) the estimated sale value of Forestar's multifamily assets; (ii) the purchase price information from letters of intent and draft purchase agreements provided to JMP by Forestar relating to certain real estate assets of Forestar held for sale; (iii) book values as of December 31, 2016 for certain other Forestar assets and liabilities provided to JMP by Forestar; (iv) estimated net proceeds that Forestar forecasted could be generated by Forestar from the sale of its multifamily assets; (v) the third party appraisals and other purchase price information provided to JMP by Forestar; and (vi) the financial metrics and inputs underlying the high discount rates that JMP applied.  *See* Proxy at 49-50.

32.      With respect to JMP's Discounted Cash Flow Analysis, the Proxy fails to disclose the range of implied present values of implied terminal values for Forestar that JMP utilized for its analysis, and the inputs and assumptions underlying the discount rates.  *See* Proxy at 50.

33.      With respect to JMP's Premiums Paid in Selected Historical M&A Transactions Analysis, the Proxy fails to disclose the 27 transactions that JMP utilized for the analysis, and the observed premiums for each transaction.  At the very least, a fair summary of this analysis requires the disclosure of the high, low, and mean premiums observed.  *See* Proxy at 50.

34.     The above-referenced key inputs are material to Forestar stockholders, and their omission renders the summaries of the above-referenced JMP valuation analyses incomplete and misleading.  As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, bankers take management's forecasts, and then make several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value . . ."  *Id*.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars . . . This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices.  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

35.     The Proxy also fails to provide material information regarding JMP's prior relationship with Forestar and Starwood.  Specifically, the Proxy fails to state whether JMP has provided any services to Forestar, Starwood, or their affiliates in recent years, and, if so, the amount of compensation it has received for such services.

36.     With respect to Forestar's Community Development Project Cash Flow Projections, the Proxy fails to disclose projections for material line items that were included or excluded and meaningfully affected the value of the disclosed cash flow data, including: (i) project related carry costs; (ii) SG&A costs not directly associated with the projects; (iii) interest expense

on corporate debt and; (iv) income taxes.  *See* Proxy at 53.

37.     With respect to the Company's Alternative Net Asset Value Scenarios Projections, the Proxy fails to disclose or adequately describe the assumptions regarding the sales prices of non-core assets, SG&A costs, headcount, interest expense, income taxes, and transaction costs that were made in connection with preparing the projections.  Proxy at 53.

38.     With respect to the Company's 2017-2026 Financial Model Projections, the Proxy fails to disclose the line item projections for the metrics that were used to calculate unlevered free cash flow, including: (i) net cash flow generated excluding debt repayment and interest expense; (ii) interest income; (iii) tax benefit of interest tax deductible; and (iv) consolidated venture cash flows due to third parties.  Because unlevered free cash flow is a non-GAAP (generally accepted accounting principles) measure, it is imperative that Forestar stockholders are able to assess the above-referenced line item projections.  Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with stockholders, because such measures lack consistency and are often inherently misleading.  Defendants must also provide a reconciliation by schedule or other clearly understandable method of the differences between the non-GAAP unlevered free cash flow projections with the most comparable GAAP financial measure.  17 C.F.R. § 244.100(a)(2).

39.     If a Proxy discloses projections and valuation information, such information must be complete and accurate.  With respect to projections and forward-looking information, corporate actors may choose either silence or speech elaborated by the full factual basis as then known, but they may not choose half-truths.

40.     Lastly, the Proxy omits material information regarding potential conflicts of interest faced by the Company's officers and directors.  Specifically, the Proxy fails to disclose

sufficient information regarding the timing and nature of all communications regarding future employment and/or directorships for Forestar's officers and directors, including all of the "certain employees" who Starwood has engaged in discussions with regarding potential employment.  *See* Proxy at 56.  The omission of such information renders the vague reference to such discussions on page 56 of the Proxy incomplete and misleading.

41.     In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading, in contravention of the Exchange Act.   Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder)**

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

44.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45.     SEC Regulation G has two requirements: (1) a general disclosure requirement; and (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure…not misleading."  17 C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

46.     The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

47.     Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Merger.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for the Company; and (ii) the valuation analyses performed by JMP in support of its fairness opinion.

48.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants,

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

49. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that JMP reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by JMP as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

50. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review JMP's analyses in connection with their receipt of the fairness opinion, question JMP as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing

materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

52.     Forestar is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

54.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

55.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of Forestar within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Forestar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

59.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

62.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the stockholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: June 16, 2017                         Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Michael Van Gorder*
Michael Van Gorder (#6214)

**OF COUNSEL:**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

20 Montchanin Road, Suite 145
Wilmington, DE 19807
Tel.: (302) 482-3182
Email: mvangorder@faruqilaw.com

*Counsel for Plaintiff*